**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00168-CV**

_____

**JONATHAN DAVID JARRETT, Appellant**

**V.**

**TIFFANY MARIE JARRETT, Appellee**

_____

**On Appeal from the 1A District Court**
**Tyler County, Texas**
**Trial Cause No. 25,872**

_____

**MEMORANDUM OPINION**

Pro se Appellant Jonathan David Jarrett ("Appellant" or "Jonathan") and Appellee Tiffany Marie Jarrett ("Appellee" or "Tiffany") were married in 2006 and have two children, Luke and Ian.[1] In 2021, Tiffany filed an Original Petition for

---

[1] We use pseudonyms to refer to the children. *See* Tex. Fam. Code Ann. § 109.002(d).

Divorce. Jonathan appeals the trial court's Final Decree of Divorce. We affirm the trial court's judgment.

Evidence at Trial[2]

<u>Tiffany's Testimony</u>

Tiffany testified that she and Jonathan have two children, Ian and Luke, who were fifteen and thirteen at the time of trial. Tiffany testified that she and Jonathan separated in late November,[3] when she left as a result of Jonathan's abuse and went to a women's shelter. According to Tiffany, several incidents that November led up to her leaving, and Jonathan was guilty of cruel treatment towards her. She testified that at the beginning of that November, Jonathan assaulted their youngest son, Luke. That week Luke had been slow to get ready for school, and one day, Tiffany was waiting in the car for her boys to take them to school. When only Ian got in the car, Tiffany asked him where Luke was, and Ian stated that Jonathan "has [Luke] in his room and he's spanking him." Tiffany testified "my heart just went to my throat because through the whole marriage when Mr. Jarrett gets angry, he loses control. I've had to step in several times to stop him because he just - - he has no control over

---

[2] In this memorandum opinion, we limit our discussion of the evidence to what is necessary to our disposition of the appeal. *See* Tex. R. App. P. 47.1.

[3] At trial, Tiffany testified that she and Jonathan separated on "November 29th[]" and did not specify a year. In her supporting affidavit attached to her Original Petition for Divorce, Tiffany stated she and Jonathan were separated on November 30, 2021. Jonathan also testified they separated on November 30, 2021.

2

his anger." According to Tiffany, Luke came running to the car crying and panicking, and Jonathan had "beat [Luke] so bad that he had buckle marks imbedded into his leg and he was bleeding [and] [y]ou could see the belt marks across his stomach [and] [y]ou could see where [Jonathan] kicked [Luke] in the crotch and bruised his whole groin." Tiffany testified that Jonathan ran out screaming profanities and asked why she was not calling the police, which Tiffany explained was a reference to 2010 when she had called the police due to his abuse. After she saw Luke's injuries, she told Jonathan to leave, and he left. Photographs Tiffany took of Luke's injuries after the incident were admitted into evidence.

Tiffany testified that on the "Saturday of Thanksgiving[,]" Jonathan "punched in the stove[]" after an argument because Tiffany and their boys did not go to Jonathan's mother's house for Thanksgiving because they were sick. Photographs taken by Tiffany of the damaged stove and of damage to a wall that had resulted from Jonathan punching the wall in anger on a prior occasion were admitted into evidence. According to Tiffany, Jonathan had a history of anger, she left him in 2010 due to domestic violence, and "there was a two-year protective order put against him because of it." A copy of the 2010 protective order in favor of Tiffany and against Jonathan was admitted into evidence. Tiffany testified that Jonathan "went to jail a few times on it[,]" was arrested and pleaded guilty to felony violation of a protective order in Orange County in 2011, and he was arrested two times subsequently for

3

violation of a protective order. According to Tiffany, one of those subsequent occasions was when she let Jonathan back into the house, Jonathan got angry and tried to take their boys, and when Tiffany tried to get their younger son from Jonathan's arms, Jonathan punched her in the face. She agreed that she also violated the 2010 protective order. Tiffany agreed that "these issues have been ongoing for the majority of [the] marriage[]" and that up until the year before this trial she had continued to try to work things out with Jonathan. Tiffany filed a protective order but after some agreements were reached, she agreed to "drop" the protective order.

Tiffany explained that since the November incident with Luke, he has been diagnosed with PTSD, is on medication, sees a psychologist and a psychiatrist, and is struggling in school. According to Tiffany, the children have not seen Jonathan in a year. Tiffany agreed that at a prior hearing in the case on February 28th, Jonathan was given the opportunity to see the children if he attended counseling, and she testified that by August he still had not attempted to get counseling and he did not contact a counselor until about a month before the trial. Tiffany testified that the licensed counselor, Shyloa Seaman, ultimately stated that it was in the best interest of the children not to proceed with the counseling.

Tiffany testified she would be concerned for her children's emotional well-being if they had to go visit Jonathan today because of his anger issues, her children are terrified of him, and she would not be there to protect them. She did not believe

that it was in the children's best interest for Jonathan to have direct access to them. She believed that Jonathan should undergo a psychological evaluation to determine what he is suffering from and whether he is a safety hazard to his children, and so he can follow the recommendations of that psychologist and attend anger management. According to Tiffany, if Jonathan completed these things, she would be comfortable with Jonathan seeing their children under a counselor's supervision and then possibly progressing from there if Jonathan complied. Tiffany testified that Jonathan was behind on his court-ordered $700 monthly child support and $1,000 monthly spousal support that he was ordered to start paying on March 1, 2022, and that she did not receive any child support until June 14, 2022, and that she did not receive any spousal support until June 28, 2022. According to Tiffany, she and the children had to move three times because of Jonathan's failure to pay her the court-ordered amounts timely and she had to incur debt for an amount owed for one of the apartments. As of trial, the balance owed by Jonathan for spousal support, child support, and medical support was $8,615.79, which included $76 for Medicaid to be paid to the State.

Tiffany requested that the trial court name Tiffany as sole managing conservator of the children, that she maintain the right to determine the children's residence without geographical restriction, and that she have the exclusive right to make all educational and health care decisions regarding the children. Tiffany

explained that based on her experience, she believed that Jonathan would use the right to make education and health care decisions in ways that were not in the best interest of the children. According to Tiffany, on one occasion, Ian was having "a lot of over acid production[]" and felt ill, and she took him to the emergency room. When she notified Jonathan that Ian was in the hospital, "instead of asking how [Ian] was doing and what the doctors were saying . . . [Jonathan] demanded that the doctor contact him . . . to speak to him himself."

Jonathan's Testimony

Jonathan testified that he did not have money for a counselor or for a psychological evaluation. According to Jonathan, Tiffany is "incapable of . . . making financial or medical or educational decisions" for their sons on her own. He testified that he was asking the trial court to have the parties pay their own respective attorney's fees. He asked that he have "[n]o less than fifty-fifty[]" custody of his children, that no child support be ordered, and that he "have all [his] rights restored" with his children. Jonathan stated he would like the trial court to name him a joint managing conservator of the children, with equal rights and duties over health care and education decision-making and he asked the trial court to impose a geographical restriction to whoever is given primary custody that the children live in Tyler County. Jonathan did not believe he was a danger to his children and believed Tiffany had alienated him from his children and "brainwashed[]" them. According

6

to Jonathan, if his children told the trial judge anything contrary about Jonathan's relationship with them it would be because of Tiffany's alienation and that Tiffany is a "master manipulator." Jonathan testified that he had always been involved with his children, that he had attended all their school meetings, often dropped them off and picked them up from school, and that his children wanted to ride with him and sit with him at church. Jonathan attributed Luke's emotional challenges not to PTSD resulting from any fault of Jonathan, but to ongoing bullying Luke has been subjected to at school. Jonathan testified that "[n]ot seeing [his] kids and not being able to talk to them is a daily death."

Jonathan testified that Tiffany is not capable of being the primary caregiver, that Tiffany is irrational and makes decisions based off past experiences that put their children "in an emotional and unsafe environment being in her care." According to Jonathan, Tiffany had accused him of kicking Luke in the crotch and she also had accused students of the same thing since 2013 and "[i]t's always everybody is messing with [Luke]'s genitalia areas[,]" and he believes Tiffany is the one that should be ordered to take a psychological evaluation. Jonathan testified that his children had missed eighty-eight days of school, but he presented no documentation of this at trial.

Jonathan denied physically harming Tiffany or the children, and he testified that Tiffany went to the women's shelter "just to alienate [Jonathan] from [his] kids."

Jonathan stated at trial that he did not know who caused Luke's injuries depicted in the photographs admitted into evidence, but Jonathan agreed that he gave Luke a "spanking . . . [o]n his butt[]" in November. He agreed that he broke the stove, but he denied putting a hole in the wall at his house, denied having an anger problem, and denied ever committing violence against Tiffany. Jonathan agreed that he had a protective order issued against him in 2010 that stated family violence would likely occur unless the order was entered. He agreed that he was arrested in 2011 for violating that protective order; that he entered a deferred pleading of guilt for a felony charge in Orange County for violating the protective order, for which he was given three years' probation; and that he also received a misdemeanor charge in Jefferson County for violating the protective order. Jonathan acknowledged that he did not pay child support until June and that he is behind on child support and spousal support in the amount of approximately $8,000.

Jonathan's Mother's Testimony

Jonathan's mother testified that she believed it is in the children's best interest for them to have visitation restored with Jonathan. And she felt they should be able to see their grandparents.

Final Decree of Divorce[4]

On March 14, 2023, the trial court signed a Final Decree of Divorce ("Final Decree"). The trial court ordered that Tiffany and Jonathan are divorced and dissolved the marriage on the ground of insupportability. The Final Decree named Tiffany as sole managing conservator of Tiffany's and Jonathan's children, and it named Jonathan as a parent possessory conservator of the children. The Final Decree stated that the court had found that Jonathan had committed family violence during the marriage and that it is in the children's best interest that Jonathan's visitation would not be in accordance with the Standard Possession Order. The Final Decree ordered Jonathan to have at least two visits with the children in the presence of a counselor, then four visits on Thursday evenings from 6 p.m. to 8 p.m. in the presence of the children's paternal grandmother, and thereafter

> any other times the children request to have visits with [Jonathan] or paternal grandmother on the first, third or fifth weekend, the children will be allowed to go. Otherwise, all visitation will be Thursday from 6:00 p.m. until 8:00 p.m. . . . .

The Final Decree ordered that after the two initial visits in the presence of a counselor, Jonathan can continue to schedule and take the children to counseling sessions at least twice a month if he chooses. The Final Decree also ordered that "[a]t

---

[4] In this memorandum opinion, we only discuss the portions of the Final Decree of Divorce that are pertinent to the issues on appeal. *See* Tex. R. App. P. 47.1.

the [child's] age of seventeen years, all visitation will be at the discretion of the child." The trial court ordered Jonathan to pay Tiffany monthly child support, in addition to his support arrearage of $8,615.79 to be paid to Tiffany out of the sale of the marital home. The Final Decree divided the marital estate in a "just and right division" and ordered that the marital home be sold and that from the proceeds Jonathan will receive his 5% separate property equity from the home and the remaining equity in the home will be split 50/50, and then from Jonathan's equity he will pay Tiffany $14,747.49 (for unpaid spousal support, his half of 2021 income taxes, and Tiffany's attorney fees). The trial court awarded Jonathan the 2008 Dodge truck and the "Camper trailer[,]" among other things.

Findings of Fact and Conclusions of Law

The trial court included the following findings of Fact and Conclusions of Law:[5]

I. Findings of Fact as to Conservatorship, Possession and Access, and Finding of Family Violence.

[] The children of this suit were 13 and 15 at the time of the final hearing. The court conducted an interview in chambers of the children at both the Temporary Hearing and the Final Hearing.
[] The court had a hearing for temporary orders on February 28, 2022 and for final orders November 30, 2022.
. . . .

---

[5] We only include findings that are pertinent to the issues on appeal. *See* Tex. R. App. P. 47.1.

[] [Jonathan] had an angry outburst near Thanksgiving 2020[6] in which he broke the stove and yelled at the family.

[] The youngest child was assaulted in early November 2020[7] by [Jonathan]. [Tiffany] took pictures of the child's injuries. Marks were visible to the child's leg, groin, and stomach.

[] [Tiffany] and the children left the home on November 29th, 2020[8], and went to a women's shelter.

[] [Jonathan] had previously committed family violence against [Tiffany] during the marriage. He had a final protective order against him in favor of [Tiffany]. He pleaded guilty and was placed on felony probation for violating the protective order.

. . . .

[] [Jonathan] failed to set up or make attempts at any restorative counseling prior to August.

[] The counselor had concerns about moving forward with the restorative counseling after doing her initial meetings due to the abuse allegations and contacted Child Protective Services.

[] [Jonathan] had not seen the children from the time [Tiffany] and the children left the home approximately one year prior.

[] The best interest of the children is for [Tiffany] to be named sole managing conservator and for [Jonathan] to have initial access through a counselor and then on Thursdays. Following the initial periods of visitation, the children, given the absence of their father and family violence, are of the age to decide if the[y] want to go to additional visitation. The court finds this is the least

---

[6] In Tiffany's supporting affidavit attached to her Original Petition for Divorce, she states that this incident occurred on November 26, 2021. At trial, she testified that the incident happened "the Saturday of Thanksgiving[]" without specifying a year.

[7] In Tiffany's affidavit in the appellate record, she states that this incident occurred on November 4, 2021. At trial, she testified that this incident was at the beginning of November, and that Luke's PTSD diagnosis was since the November 2021 incident. The date of this incident is not at issue in this appeal.

[8] At trial, Tiffany testified that she and Jonathan separated on "November 29th[]" and did not specify a year. In her supporting affidavit attached to her Original Petition for Divorce, Tiffany stated she and Jonathan were separated on November 30, 2021. Jonathan also testified they separated on November 30, 2021. The date of separation is not at issue in this appeal.

11

restrictive means available to protect the children's physical and emotional health.

## II. Findings of Fact as to child support and previously owed support under temporary orders

. . . .

[] The court ordered $1000 per month spousal support and 700 per month child support at the temporary hearing to be paid by [Jonathan] to [Tiffany]. [Tiffany] moved into an apartment at 1068 per month prior to the temporary orders with the children.

. . . .

[] Per an Attorney General financial activity printout, [Jonathan] was delinquent on 2,138.50 on his child support, $76 on his medical support payments and $6,949.00 behind on spousal support. [Jonathan] owed a total of $8,615.49 for the temporary order.

## III. Findings of Facts as to Marital Property

[] The home was acquired during the marriage, but [Jonathan]'s separate property funds acquired by gift from his parents were used to pay a $6,139 down payment on a $120,000 purchase price. All mortgage payments were made with community property.

[] The largest asset of the marriage was a home with a tax appraisal of $200,000.00 and $110[,]391.75 owed.

[] The parties received a tax return of $2,264.00 which had not been divided between the parties but was kept by [Jonathan] despite the Temporary order to divide the return.

[] The parties agreed on the record, and the court found that the personal property items were offsetting in value.

. . . .

[] [Tiffany] had a debt in the amount of $1,848.15 from breaking her lease at an apartment complex during the temporary order period because she couldn't afford without child or spousal support being paid.

[] [Tiffany] owed her attorney $6,145.56 prior to the final hearing.

. . . .

12

[] Photographs showed a camper in the marital driveway.

. . . .

[] The court finds the division of the community property is just, fair, and equitable.

## IV. Conclusions of Law as to Conservatorship and Possession and access.

[] §153.004 of the Texas Family Code provides that the court shall consider evidence of intentional use of abusive physical force committed within a two-year period against a member of household in determining whether to appoint a party as a sole or joint managing conservator. §153.005 provides the court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect against a child. Family violence is defined in §71.004 of the Family Code. The court found family violence did occur.

[] Typically, a parent enjoys a rebuttable presumption that a parent should be named a conservator under §15[3].131 of the Family Code, however, 153.131(b) states that the presumption is removed if there is a finding of family violence.

[] §153.256 allows the court to consider a possession order other than standard using the age, development status, circumstances, needs, and best interest of the child[,] the circumstances of the conservators and any other relevant factor.

## V. Conclusions of Law as to Child Support and Attorney Fees

. . . .

[] §6.708[(]c) of the Family code permits a court to award reasonable attorney fees and expenses.

## VI. Conclusions of Law as to the Division of Marital Property

[] The general rule of property division in a decree of divorce is the court shall order a division of the estate of the parties that the court deems just and right, having due regard for the rights of each party and any children of the marriage. Family Code § 7.001. The Texas Supreme Court in [*Murff v. Murff*], 615 S.W.2d 696, 699 [Tex. 1981], states that the trial court may consider such

13

factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, physical condition, relative financial condition and obligations, among others.

[] As with the house in this case, if the community estate of the spouses and the separate estate of a spouse have an ownership interest in property, the respective ownership interests of the marital estate are determined by the rule inception of title. Texas Family Code §3.006.

Issues on Appeal

Appellant's stated "issues" on appeal, as listed in his pro se brief, are as follows:

1.  Did the court err when allowing for a Temporary Restraining Order?

2.  Did this TRO affect the Dissolution of Marriage Suit giving the court bias?

3.  Did dropping the TRO without a hearing affect [Appellant's] relationship with his two sons and did it affect the suit going forward?

4.  Did the trial judge abuse discretion when ordered spousal maintenance?

5.  Did the trial judge abuse discretion and ignore rules of evidence when finding [Appellant] committed Family Violence?

6.  Did the trial judge have bias, abuse discretion and ignore rules of evidence when finding [Appellant] "assaulted" his child?

7.  Are the Findings of Fact and Conclusions of Law by the trial court erroneous?

8.  Did the trial court have jurisdiction and discretion to give [Appellee] the 2011 Chevrolet Equinox even though [Appellant] followed the

14

temporary orders and the Motion's Pleading of an unsafe motor vehicle was no longer valid?

9. Did [Appellant] have a fair divorce suit?

10. Did [Appellant] have competent representation from [his former trial counsel]?

11. Did [Appellant] have competent representation from [his trial counsel]?

12. Did the trial judge and opposing counsel testify as voluntary witnesses?

13. Did the opposing counsel mislead the court with false statements of fact and with his own attempts to act as a voluntary character witness of [Appellant]?

That said, in his appellate brief Appellant does not specifically address each of these questions in thirteen arguments, but he includes ten sections in his brief numbered I (one) through X (ten). Accordingly, we address the arguments made in the ten sections in his appellate brief, and we refer to those arguments as complaints as raised in sections one through ten.[9] Appellee did not file a brief on appeal.

---

[9] In his conclusion and prayer on appeal, Appellant requested the following relief: he asks this Court to vacate the trial court's Temporary order and Final Decree or remove portions that our Court finds "in contempt of the laws and [Appellant]'s and his children's rights[;]" "that it is shown that he did not have effective defense during this trial and yearlong suit based on the type of questions he received and based on not having much in the way of his own exhibits to defend against allegations made against him in this suit[;]" this Court to reverse the trial court's order of spousal maintenance and that any portion that was withheld from his check be applied to his past child support arrearages; this Court to "remove" from the Final Decree "'Family Violence' and all penalties associated with it[;]" this Court to determine that there is no evidence that he subjected his son to abuse and to restore

Standard of Review

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002. The trial court is afforded great discretion when making such determinations, and we review the trial court's decision for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *See In re G.J.G.*, No. 09-21-00396-CV, 2023 Tex. App. LEXIS 9542, at \*\*11-12 (Tex. App.—Beaumont Dec. 21, 2023, no pet.) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied)).

---

all of Appellant's parental rights; this Court order that Appellant's access not be subject to the children's own decision "as they may have been subject to parental alienation[;]" this Court award him "restored time" and sole custody of his children; this Court reverse the trial court's award of the 2011 Chevrolet Equinox to Tiffany and that "he may seek relief for any damage that occurred to the vehicle" since then; this Court to award him "control and management" of the Oakford Lane home and that he be entitled to relief "from damages that have incurred" from the trial court's decision to give control of the home to Tiffany; this Court to remove the RV from the Final Decree because Appellant's brother owns it; this Court award him "all or a fair portion" of Appellant's $7,500 paid to his counsel during the Temporary Orders hearing; this Court to reverse the Final Decree's award of Tiffany's attorney's fees to be paid by Appellant; this Court to award Appellant "relief from the money he paid the [Restorative] Counselor[;]" and that this Court grant Appellant any other relief that he is entitled to receive.

16

A trial court may place conditions on a parent's access to a child, such as supervised visitation, when it is in the child's best interest. *In re A.G.*, 531 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2017, no pet.). There is a rebuttable presumption that the standard possession order provides the reasonable minimum level of possession and access for a parent named possessory conservator and is in the best interest of the child. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (citing Tex. Fam. Code Ann. § 153.252). When determining whether to deviate from the standard possession order, a court may consider "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." Tex. Fam. Code Ann. § 153.256; *In re J.J.R.S.*, 627 S.W.3d at 218. The terms of an order that deviate from the standard possession order—that is, an order that "denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child"— "may not exceed those that are required to protect the best interest of the child." *In re J.J.R.S.*, 627 S.W.3d at 218-19 (quoting Tex. Fam. Code Ann. § 153.193). In addition, a court "shall specify and expressly state in the order the times and conditions for possession of or access to the child, unless a party shows good cause why specific orders would not be in the best interest of the child." Tex. Fam. Code Ann. § 153.006(c); *In re J.J.R.S.*, 627 S.W.3d at 219. "[A] severe restriction or

17

limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child." *In re Walters*, 39 S.W.3d 280, 286 n.2 (Tex. App.—Texarkana 2001, no pet.).

The law presumes that the appointment of both parents as joint managing conservators is in the best interest of the children. *See* Tex. Fam. Code Ann. § 153.131(b). That presumption is removed, however, if the trial court makes a finding of a history of family violence. *Id.* "In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force . . . by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit." Tex. Fam. Code Ann. § 153.004(a). The court "may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical . . . abuse by one parent directed against the other parent, a spouse, or a child[.]" *Id.* § 153.004(b). "The court shall consider the commission of family violence . . . in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." *Id.* § 153.004(c). The Family Code does not define "history," but a single act of violence or abuse suffices to show a history of physical abuse. *See Baker v. Baker*, 469 S.W.3d 269, 274 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Dewalt*

18

*v. Dewalt*, No. 14-06-00938-CV, 2008 Tex. App. LEXIS 2730, at **9-10 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.) (mem. op.)); *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.) (citing *In re Marriage of Stein*, 153 S.W.3d 485, 489 (Tex. App.—Amarillo 2004, no pet.)).

The factfinder "'is the sole arbiter of the witnesses' credibility and demeanor,'" and here the trial court was the factfinder. *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)). So, our review must defer to the trial court's factual determinations. *Id.* Because the factfinder is the sole judge of credibility of the witnesses and the weight to be assigned to their testimony, the factfinder may believe one witness and disbelieve another, and as a reviewing court we may not impose our own opinions to the contrary. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *see In re L.K.S.*, No. 09-23-00364-CV, 2024 Tex. App. LEXIS 5879, at *16 (Tex. App.—Beaumont Aug. 15, 2024, no pet.)(mem. op.). As such, reviewing courts must assume that the factfinder decided all credibility questions in favor of the findings, and that the factfinder chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *See City of Keller*, 168 S.W.3d at 819-20. We review a trial court's findings of fact for legal sufficiency, and its conclusions of law under a de novo standard of review. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We assume the factfinder

19

resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible. *See In re J.F.-G.*, 627 S.W.3d at 312 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *In re A.E.A.*, 406 S.W.3d 404, 414 (Tex. App.—Fort Worth 2013, no pet.); *see also In re S.C.T.*, No. 09-23-00044-CV, 2025 Tex. App. LEXIS 1254, at *101 (Tex. App.—Beaumont Feb. 27, 2025, no pet. h.) (mem. op.). As this Court has explained, "'the trial court is in the best position to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers and influences that cannot be discerned by merely reading the record.'" *See Warchol v. Warchol*, 853 S.W.2d 165, 167-68 (Tex. App.—Beaumont 1993, no writ) (quoting *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. App.—Dallas 1981, no writ)).

We construe an appellant's pro se brief liberally. *See Giddens v. Brooks*, 92 S.W.3d 878, 880 (Tex. App.—Beaumont 2002, pet. denied) ("pro se pleadings and briefs are to be liberally construed[]"); *see also Sterner v. Marathon Oil Co.*, 767

20

S.W.2d 686, 690 (Tex. 1989) (a reviewing court construes points of error liberally to obtain a just, fair, and equitable adjudication of the parties' rights). That said, a pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). Pro se parties must comply with the rules governing preservation of error and the rules requiring adequate briefing and citations to the record. *Redmond v. Kovar*, No. 09-17-00099-CV, 2018 Tex. App. LEXIS 925, at **5-7 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.) (citing *Ramey v. Fed. Home Loan Mortg. Corp.*, No. 14-14-00147-CV, 2015 Tex. App. LEXIS 6039, at *4 (Tex. App.—Houston [14th Dist.] June 16, 2015, no pet.) (mem. op.)). "The appellate court has no duty to brief issues for an appellant." *In re A.E.*, 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied) (citing *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.)).

An appellate brief "'must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015) (quoting Tex. R. App. P. 38.1(i)). The failure to provide citations, argument, and analysis of an appellate issue may waive the issue. *Id.* (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010)).

21

Temporary Orders

In sections two, three, four, six, and seven, eight, and part of sections one and five, Jonathan complains about the trial court's temporary hearing and temporary orders. A temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order. *See Barnes v. Crawley*, No. 09-20-00224-CV, 2022 Tex. App. LEXIS 3859, at *13 (Tex. App.—Beaumont June 9, 2022, no pet.) (mem. op.) (citing *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.); *Rafferty v. Finstad*, 903 S.W.2d 374, 378 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (concluding the divorce decree superseded temporary orders, and after decree was entered, temporary orders ceased to be "valid, subsisting, orders[]")); *In re C.A.*, No. 10-16-00351-CV, 2021 Tex. App. LEXIS 831, at **10-11 (Tex. App.—Waco Feb. 3, 2021, no pet.) (mem. op.) (issues related to the temporary orders are moot since the trial court subsequently entered a final order); *see also Vara v. Vara*, 645 S.W.3d 818, 823 (Tex. App.—El Paso 2022, pet. denied) (entry of final order moots temporary order); *In re J.G.*, 587 S.W.3d 25, 31 (Tex. App.—Tyler 2018, pet. denied) (temporary order superseded by entry of final order rendering moot complaints about temporary order); *Williams v. Williams*, No. 01-16-00970-CV, 2017 Tex. App. LEXIS 10366, at *2 (Tex. App.—Houston [1st Dist.] Nov. 7, 2017, pet. denied) (mem. op.) (temporary orders in cases involving conservatorship of children and in divorce proceedings become moot upon the entry

of a final order or decree); *In re A.K.*, 487 S.W.3d at 684 (because the trial court entered a final judgment the temporary orders are moot and not subject to review on appeal); *Erlewine v. Erlewine*, No. 03-06-00308-CV, 2007 Tex. App. LEXIS 7256, at *5 (Tex. App.—Austin Aug. 29, 2007, no pet.) (mem. op.) (concluding temporary order modifying child support was no longer in effect when superseded by final judgment and complaint about modification was moot); *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 1988, no writ) (complaints relating to temporary orders that have since been superseded by a final order are moot). Accordingly, we overrule the complaints made in sections two, three, four, six, and seven. To the extent Appellant's first, fifth, and eighth sections complain of matters related to temporary hearings or orders, those complaints are also overruled.

Conservatorship and Access

In part of section one of his brief, Appellant complains about the trial court's finding that Appellant had committed family violence. According to Appellant, the photographs of injuries to Luke allegedly caused by Appellant's abuse "do not prove who, why, how, or the intention of the alleged 'marks'" and were not evaluated by a medical expert. Appellant argues that Luke did not need medical treatment, and there was no eyewitness testimony to the "marks." He also argues that it is "reasonable that discipline would be necessary if the adolescent boy was not attempting to get dressed or ready for school." Appellant also appears to challenge

23

the sufficiency of the evidence supporting the trial court's finding that it was in the children's best interest for Tiffany to be named sole managing conservator and for Jonathan to have restricted visitation. In section nine, Appellant appears to be complaining about Finding of Fact No. 10 wherein the trial court found that "The counselor had concerns about moving forward with the restorative counseling after doing her initial meetings due to the abuse allegations and contacted Child Protective Services."

As part of his argument in section one, Jonathan also complains about the evidence supporting the trial court's finding that it was in the children's best interest for Tiffany to be named sole managing conservator and for Jonathan to have restricted visitation. Jonathan then fails to discuss what evidence, if any, does or does not relate to the best interest factors discussed in *Holley*. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[10] His complaint is inadequately briefed and presents nothing for our review. *See* Tex. R. App. P. 38.1(i).

---

[10] On appeal, we assess the trial court's best-interest finding by using the *Holley* factors. *See In re D.E.T.*, No. 09-22-00197-CV, 2023 Tex. App. LEXIS 5811, at **18-19 (Tex. App.—Beaumont Aug. 3, 2023, no pet.) (mem. op.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)). The *Holley* factors include (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371-72. The *Holley* factors are not

The trial court heard Tiffany testify about at least one instance of Jonathan punching her in the nose. The trial court also heard Tiffany testify that just prior to her filing for divorce, Jonathan beat Luke until Luke was bleeding and the beating caused marks on Luke's body and caused Luke to receive a diagnosis of PTSD. The trial court viewed photographs of Luke's injuries. The trial court also interviewed the children in chambers. The trial court heard Tiffany testify that in 2010 she obtained a protective order against Jonathan and multiple times he violated the order. Although Jonathan denied that he committed any physical abuse against Tiffany or his children, the trial court as factfinder could have disbelieved Jonathan and believed Tiffany. On this record, the trial court did not abuse its discretion in finding Jonathan committed family violence and that Jonathan assaulted Luke, and the trial court did not abuse its discretion in appointing Tiffany sole managing conservator and restricting Jonathan's access to the children. We overrule Appellant's complaints in sections one and nine.

---

exclusive, and the evidence that the factfinder considers in making a best-interest decision need not address all the *Holley* factors. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re K.R.K.-L.H.*, 671 S.W.3d 761, 770 (Tex. App.—Beaumont 2023, pet. denied). The factfinder may consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *See In re K.P.*, No. 09-22-00049-CV, 2022 Tex. App. LEXIS 5787, at \*\*29-30 (Tex. App.—Beaumont Aug. 11, 2022, pet. denied) (mem. op.) (citing *In re R.J.*, 568 S.W.3d 734, 751-52 (Tex. App.—Houston [1st Dist.] 2019, no pet.)).

The Recreational Vehicle and the Black Dodge Truck

In another part of section ten, Appellant appears to complain that the trial court in the Final Decree awarded him the "camper trailer"/RV and the "black truck" despite Appellant's testimony that the "camper trailer"/RV belongs to his older brother and the "black truck" belongs to his younger brother. On appeal, Appellant asks this Court to "remove[] from the Final Decree" the award of what the Final Decree refers to as the "camper trailer" and the "Black Dodge Truck." A party's failure to cite to appropriate legal authority or to provide any analysis of the legal issues presented results in a waiver of the complaint on appeal. *See* Tex. R. App. P. 38.1(i); *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 880. Appellant provides no legal analysis in support of this argument and therefore he has waived this argument. *See id.* We overrule this complaint.

Attorney's Fees and Allegations of the Trial
Court's "Bias," "Prejudice," or "Nepotism"

In part of section five of his brief, Jonathan complains of what he describes as the trial court's "continued prejudice" and "nepotism[.]"[11] Appellant also challenges the trial court's award of attorney's fees to Tiffany and alleges examples of what he claims is preferential treatment by the trial court towards Tiffany.

---

[11] Jonathan's complaints in issue five that relate to the Final Hearing are that Tiffany's counsel "mischaracterize[d]" Jonathan and "misrepresent[ed] the material facts[,]" and that the trial court's ordering that the marital home be listed by a realty company allegedly owned by opposing counsel's daughter constitutes "nepotism."

Appellant agrees that section 6.708(c) of the Texas Family Code permits a trial court to order a party to pay opposing counsel's attorney's fees and expenses, but he argues such an award "is without merit in this case after [Appellant] had to secure payment for two of his own attorneys and had the burden of excessive costs in which the petitioner of the suit benefited." Attorney's fee awards in divorce cases are reviewed for an abuse of discretion. *Murff*, 615 S.W.2d at 699 (citing *Carle v. Carle*, 234 S.W.2d 1002, 1005 (Tex. 1950). "In a suit for dissolution of a marriage, the court may award reasonable attorney's fees and expenses[] [and] may order the fees and expenses and any postjudgment interest to be paid directly to the attorney[.]" Tex. Fam. Code Ann. § 6.708(c). A trial court may consider reasonable attorney's fees, along with the parties' circumstances and needs, in effecting a just and right division of the estate. *Murff*, 615 S.W.2d at 699.

Appellant has failed to provide legal authority in support of his argument that the award of attorney's fees was "without merit" because he had to pay two attorneys and excessive costs which he claims benefitted Tiffany.[12] He also has failed to provide analysis or legal authority in support of his allegations of "bias" or "prejudice" of the trial court. Although Jonathan cites the Code of Judicial Conduct in claiming that the trial court engaged in "nepotism" when it ordered the sale of the

---

[12] We note that Tiffany's counsel testified regarding Tiffany's attorney's fees and Appellant does not appear to challenge the reasonableness of those fees.

27

marital home to be listed with a realty company that is allegedly owned by opposing counsel's daughter, Jonathan provided no legal analysis for his contention that the trial judge engaged in "nepotism." We conclude that Appellant has waived his complaints about the attorney's fees awarded and his complaints that the trial judge allegedly showed "bias," "prejudice," or engaged in "nepotism." *See* Tex. R. App. P. 38.1(i); *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 880. We overrule these complaints as asserted in sections five and ten of his brief.

Ineffective Assistance

To the extent that Appellant's ninth and tenth sections of his brief assert a complaint that he was denied the effective assistance of counsel, "'[t]he doctrine of ineffective assistance of counsel does not extend to most civil cases, including divorce cases.'" *Jackson v. Jackson*, No. 09-16-00189-CV, 2018 Tex. App. LEXIS 1908, at **1-2 (Tex. App.—Beaumont Mar. 15, 2018, no pet.) (mem. op.) (quoting *Sherwood v. Sherwood*, No. 09-15-00133-CV, 2016 Tex App. LEXIS 1939, at *2 (Tex. App.—Beaumont Feb. 25, 2016, no pet.) (mem. op.)); *see also Blair v. McClinton*, No. 01-11-00701-CV, 2013 Tex. App. LEXIS 8048, at *8 (Tex. App.—Houston [1st Dist.] July 2, 2013, pet. denied) (mem. op.); *Chrisman v. Chrisman*, 296 S.W.3d 706, 707 (Tex. App.—El Paso 2009, no pet.). We overrule his complaints contained in sections nine and ten to the extent they relate to the ineffective assistance of counsel.

Having overruled all of Appellant's complaints as stated in his brief, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on January 27, 2025
Opinion Delivered May 8, 2025

Before Golemon, C.J., Johnson and Wright, JJ.